## OAKES *v.* YOUNG.

---

PATENTS; INTERFERENCE; DISCLOSURE; DILIGENCE; ORIGINALITY.

1. In an interference involving the invention of a water-closet bend, between an application and a reissue patent, where it appeared that in the original application of the patentee he did not claim a material feature of the invention of the issue, and he admitted that in giving directions to a pattern maker, which he relied upon to show disclosure, he instructed him to omit this feature of his work in making the patterns, as he was in a hurry, it was *held* that disclosure was not shown, and that he could not claim a date earlier than his first patent application.

2. Where, in an interference involving the invention of a water-closet bend, . it appears that a month prior to the filing date of one of the parties, the other party had manufactured and sold devices embodying the invention; that they had been put in use and found satisfactory;

that he was paid for them about a month thereafter, and that he continued to make them from the same patterns and put them into practical use, it was *held* that he was not lacking in diligence.

3. Where one of the parties to an interference involving a water-closet bend, one of the material features of which was a lip flange, testified that he had told the other party of his invention prior to the date of conception claimed by the latter, but failed to state that he had explained at the time this particular feature, leaving it to be inferred from his general statement that he had done so, and his testimony was not supported by circumstances or other witnesses, it was *held* that he had not sufficiently shown that the other party had received his ideas from such disclosure, and was not therefore the original inventor.

No. 616. Patent Appeals. Submitted January 14, 1910. Decided February 1, 1910.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are stated in the opinion.

*Mr. L. S. Bacon* and *Mr. C. F. Burton* for the appellant.

*Mr. Edward N. Pagelsen* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an interference proceeding between rival claimants of an invention of an improvement in water-closet bends.

The object of the invention is to prevent the syphoning of the traps of bath tubs, wash basins, etc., which may be connected with the bend, during the flushing of the closets attached thereto. This is accomplished by providing an air space along the top of the horizontal part of the fitting, and connecting the bath tub, etc., pipes at the top so that they discharge into and through the said air space, and suction is thereby prevented when the closet is flushed. The air chamber is formed by arranging in the neck of the closet fitting a flange

or projection which extends a short space into the horizontal part of the fitting.

The issue of the interference is in the three following counts:

"1. A water-closet bend having an inlet, said bend being so constructed that the upper part of its bore, from the delivery end of said bend toward the inlet pipe, shall be above the delivery end of the said inlet, and an inlet communicating with said upper part of said bore, for the purpose described.

"2. A water-closet bend having an inlet provided with a flange, which carries the delivery end of the inlet below the upper part of the bore of the bend and an inlet communicating with said upper part of the bore, substantially as and for the purpose described.

"3. A water-closet bend having an inlet, said bend being so constructed that the upper part of its bore shall be above its delivery end of said inlet, an inlet communicating with said upper part of said bore, and means for placing said upper part of said bore into. communication with the outer air for the purpose described."

Ben Oakes first filed an application for a patent for a water-closet bend on August 8, 1906, which resulted in a patent issued March 13, 1907. This patent did not claim the invention of the issue. On May 17, 1907, he filed an application for reissue in order to cover the invention of the issue, and the same was granted August 27, 1907.

William E. Young filed April 22, 1907, and the interference was declared between this application and the reissue patent of Oakes, which had been granted, while his application was pending. The Examiner of Interferences, and the Examiners-in-Chief concurred in an award of priority to Oakes. On appeal the Commissioner reversed their decision and awarded priority to Young.

The testimony on each side is vague and uncertain in some important particulars. It seems that there is an infringement suit by Oakes against Young pending in the circuit court for the eastern district of Michigan, and Young's evidence consists of extracts from the testimony in that case and an agree-

ment concerning the same. As shown therein Young testified that he made his original sketch illustrating the invention on "Labor day," 1905, and a pattern maker began work on a wood and paper pattern about January 1, 1906, at a foundry, and completed the same about the end of June, 1906. Between September, 1905, and July, 1906, he was in a bad financial condition. He had lost his arm, and his business as a plumber ran down until he had to give it up. Keller testified that Young telephoned to him on Labor day, 1905, and made an appointment to meet him on that day. That Young had a small pencil sketch of a special fitting, and wanted him to work patterns for casting. When shown the sketch produced by Young, he said: "That is the outline of it. I would not be positive whether it is the same or not." He also said that Young explained the operation of his new fitting. There was considerable delay in making the patterns, as Young testified, and they were not completed until the latter part of June, 1906.

This evidence was embodied in a stipulation signed by the respective counsel, which began as follows: "That the matter hereto attached, consisting, in part, of facts agreed upon between the parties, in part, of testimony relating to alleged facts, and in part, a pencil copy of an original sketch, made and produced by said Young" and which is agreed is an accurate copy of said original sketch, shall constitute the testimony in chief of the junior party." One of the agreed facts is that Young is fifty-seven years old and had worked in the plumbing trade as a master plumber since the age of fifteen years. He lost his arm about eleven years before testifying. The stipulation concludes with the following paragraph:

"On July 3d, 1906, the wood and paper pattern was put into the sand, and castings made, which were finished off at once into metal patterns. From these metal patterns the finished bends were made, such as are illustrated in Figures 3 and 4 of the drawings of Young's application. Some were completed on or before July 25th, 1906. Some were sold and delivered on July 29, 1906, were put in use, were found satisfactory, and were paid for. Payment was made on or about September 17th

1906.. Hundreds have been made off the same patterns since then and put into practical use."

On this evidence all of the tribunals of the Office agreed that Young must be awarded a date of conception not earlier than July 1st, 1906. Although Oakes claimed to have conceived the invention in 1894, he undertook to prove disclosure in May, 1906. His own testimony is positive that he employed a pattern maker to make patterns for a casting, including the flange, or "lip," as it is called. The corroborating evidence is decidedly vague. The difficulty with this corroborating evidence is that it does not show with certainty that the early patterns of May, 1906, contained the specific feature of the extended projection, flange or lip, which protects the air space in the horizontal part of the structure. On his cross-examination his attention was called to his evidence given shortly before in the infringement suit. His attention was there directed to this special feature as indicated in his Patent Office drawings, and he was asked whether the bends made by Bryant and Berry had these flanges. (These were the first bends made from the first set of patterns in May and June, 1906.) His answer was: "I will state the pattern maker, in making these patterns at Bryant & Berry's or rather the foreman, gave me the impression that it was hard to draw the patterns from the sand, consequently being in a hurry to get the bends, I told him to leave it out, and it was not cast in those first bends that were made." In view of this positive statement, we must concur with the tribunals of the Office that he cannot claim a date earlier than his first patent application, in which, as we have seen, he omitted to claim this feature of his invention.

The agreed statements of facts shows clearly that patterns made from Young's sketch were put in the sand, and metal patterns cast therefrom on July 3d, 1906. The further recital is that the finished bends of the issue were then made." Some were completed on or before July 25th, 1906. Some were sold and delivered on July 28, 1906, were put into use, were found satisfactory, and were paid for. Payment was made on or about September 17, 1906. Hundreds have been

made off the same patterns since then and put into practical use." All of the tribunals agreed necessarily that under this stipulation Young was entitled to July 3d, 1906, as his date of conception. He was therefore the first to conceive. All agreed, also, that the stipulation did not show reduction to practice before Oakes' filing date. The first two concurred in holding that Young was not using diligence on that date, and hence their award of priority to Oakes. The Commissioner was of the opinion that he was using diligence, and therefore reversed the decision and awarded priority to Young.

It is not material to inquire if Young is not entitled to reduction to practice of a date prior to August 8th, 1906, under the aforesaid stipulation. Whether so or not, it is quite clear that he was using diligence at least. He had manufactured and sold them on July 29, 1906, and they were put in use, found satisfactory, and paid for on September 17, 1906. He continued thereafter to make them from the same patterns and put them into practical use. We are unable to perceive wherein he was lacking in diligence between July 3 and August 8, 1906.

A question of originality was raised by Oakes' testimony. This was noticed, but not passed upon, by the Examiner of Interferences, and was not noticed by the other tribunals at all. Oakes testified .that he met Young some time in May, 1906, and explained to him that at the time he was ready for having patterns made, and showed him, with a sketch, the different ways in which he could make the bends, and showed him how he was making the first one. Going over the sketch, told him how it could be made with a 5-inch outlet end, or a 4-inch one, and explained to him thoroughly the two or three styles that he intended to get out. There were several important features in Oakes' bend, and this lip flange was then evidently not considered a very important one, because he had omitted it in the making of the patterns, and did not claim it in his first application. If this specific feature was explained to Young, it is strange that he [Oakes] did not say so, and not

leave it to inference from his general statement of the information given.

Young had not been called as a witness, but a statement from his deposition in the infringement had been used by agreement. In that statement he testified positively to his conception long before the date of the alleged communication, nor, it seems, had he been inquired of concerning this in his examination in the other case. It does not appear whether he was accessible at the time this evidence was taken or not. He should have been called, if possible, to rebut Oakes. But had he been, he would have had to deny the communication, or else admit the falsity of his former testimony. Oakes' testimony was not supported by circumstances, or other witnesses.

In view of these conditions, and particularly of his failure to state that he had explained this specific feature to Young, we are not prepared to hold that the latter received his ideas from the former.

Considering the manner in which the testimony in this case has been taken, we must confess that we are not without some doubt in regard to the conflicting claims of the parties. Oakes, at any rate, has his patent, and the parties are at issue in an infringement suit wherein, alone, the rights of the litigants can be finally settled.

The decision will be affirmed. The clerk will certify this decision to the Commissioner of Patents.          *Affirmed.*